UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY DON JOHNSON #286979,

   Plaintiff,          Hon. Hala Y. Jarbou

v.                  Case No. 1:17-cv-853

LESLIE M. BRYANT, et al.,

   Defendants.

_____/

**REPORT AND RECOMMENDATION**

  This matter is before me on Defendant's Motion for Summary Judgment (ECF No. 139), which requests summary judgment on Plaintiff's retaliation claim. The motion is fully briefed and ready for decision.

  Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **granted** and that the complaint be **dismissed with prejudice**.

**I. Background**

  Plaintiff, who is currently on parole from the Michigan Department of Corrections (MDOC), filed a complaint pursuant to 42 U.S.C. § 1983 alleging claims based on events that occurred between September 2016 and November 1, 2016, while Plaintiff was housed at Bellamy Creek Correctional Facility (IBC). Plaintiff's only remaining claim in this matter is that Defendant Bryant[1] retaliated against Plaintiff on November 1, 2016, by issuing Plaintiff a false misconduct report, causing Plaintiff to be sent to segregation.

---

[1] Defendant Bryant was married in 2015, at which point she changed her last name from her maiden name, Beak, to Bryant. (ECF No. 140-3 at PageID.600 (Bryant was previously known as Beak)).

1

In 2016, Defendant Bryant was an Assistant Resident Unit Supervisor (ARUS) at IBC. (ECF No. 140-2 at PageID.583.) On September 26, 2016, Plaintiff was placed in a cell with a prisoner who had Methicillin-resistant Staphylococcus aureus (MRSA), a contagious staph infection. On October 3, 2016, Plaintiff spoke with ARUS Bryant "about getting a room change." Bryant responded to the request by telling Plaintiff "to deal with it." That same day, Plaintiff filed a grievance against Bryant "for failing to assign him to another cell given his roommate's MRSA infection." (ECF No. 1 at PgeID.7.)

On October 4, 2016, Plaintiff went to ARUS Bryant's office "to send out legal mail." Bryant stated to Plaintiff, "So, you wrote a grievance on me over this room shit after I told you to deal with it for a few weeks. You don't want to get on my bad side." Plaintiff responded by asking Bryant, "if it was you, would you want to lock with someone who has a contagious disease?" Bryant then stated to Plaintiff, "I'm just letting you know lay off the grievances or I'll make your time hard." That same day, Plaintiff filed a grievance alleging that ARUS Bryant improperly informed other prison officials of Plaintiff's religious affiliations and his status as a member of a Security Threat Group. (*Id.* at PageID.7–8.)

On October 10, 2016, Plaintiff again asked ARUS Bryant to transfer him to another cell, but Bryant told Plaintiff that she was unaware that his roommate had MRSA. She further told him that even if his roommate had MRSA, the issue was one for healthcare to address. Accordingly, Bryant refused Plaintiff's request, prompting Plaintiff to file another grievance against Bryant. (*Id.* at PageID.8.)

On November 1, 2016, Plaintiff spoke with ARUS Bryant and again requested a transfer to another cell. Corrections Officer (CO) Robert Darnell overheard Plaintiff and responded, "You better hope we don't find something to put you in segregation for, that's the only room change

you're going to get for all these grievances you been writing." (*Id.*) At about 8:30 a.m. that morning (apparently after the exchange with Darnell and Bryant alleged in the complaint), Plaintiff approached ARUS Bryant during a "mass movement"—a time when a large number of prisoners are moving around the unit—and demanded in an aggressive tone that he be moved to a different cell because his bunkmate had MRSA. (ECF No. 140-2 at PageID.586.) Because of the number of prisoners around and Plaintiff's conduct, Bryant told Plaintiff that he could not be moved and that he needed to either go into a day room or return to his cell. (*Id.*) Unit officers responded after Bryant called for other staff to assist. (*Id.*) After the officers responded, Plaintiff complied with a command to return to his cell. (*Id.*; ECF No. 140-3 at PageID.587.)

A short time later, Plaintiff came out of his cell and continued to argue with staff about a cell change. ARUS Bryant told Plaintiff that he could either go take a shower or return to his cell because he had missed movement time. (*Id.*) During this exchange, Plaintiff told Bryant to "watch your fucking mouth and watch who you're talking to." (ECF No. 140-3 at PageID.598.) Immediately thereafter, CO Darnell, who was in the break room next to Bryant's office, came out and asked what was going on. Plaintiff responded that he would lock down, but Bryant would have to watch how she was talking to Plaintiff. (*Id.* at PageID.599.) Bryant issued Plaintiff a Class II misconduct ticket for Creating a Disturbance. (ECF No. 1-1 at PageID.28.)

CO Darnell subsequently wrote a memorandum about the incident, in which he reported that he heard Plaintiff "yelling at ARUS Beak [Bryant]," and because the noise was so loud, he left the break room to see what was going on. (*Id.* at PageID.29.) Following the November 14, 2016 hearing on the misconduct ticket, the hearing officer found Plaintiff not guilty. The hearing officer explained:

> The reporter [Bryant] describes that three unit officer [sic] responded to prisoner's yelling on A-base. However, only one officer made a statement in addition to the

3

> reporter, and that officer mentions ARUS Beak as being present. ARUS Beak did not make a statement. I find all staff members referred to in the Misconduct Report and in the staff witness statement are necessary witnesses. Charge dismissed.

(*Id.* at PageID.30.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. Discussion

The requirements for a valid First Amendment retaliation claim are well established. A plaintiff must establish that: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In addition, a plaintiff must be able to prove that the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Even if the plaintiff makes a prima facie showing of retaliation, the defendant may still show that she was not motivated by unlawful retaliation:

4

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X*, 175 F.3d at 399.

There is no issue here that Plaintiff has established a prima facie case of retaliation. That much is shown by the facts set forth above: (1) Plaintiff filed grievances; (2) ARUS Bryant thereafter took an adverse action against Plaintiff; (3) and Plaintiff has presented sufficient evidence—including temporal proximity and Bryant's own words—to satisfy the requisite causal connection.

The sole issue presented is whether a dispute of fact remains as to whether Defendant Bryant would have written the misconduct ticket even if Plaintiff had not engaged in his grievance activity. Defendant Bryant wrote the misconduct ticket for Creating a Disturbance. The applicable MDOC Policy Directive defines this violation as: "Actions or words of a prisoner which result in disruption or disturbance among others but which does not endanger persons or property." Mich. Dep't of Corr. Policy Directive 03.03.105B (ECF No. 140-4 at PageID.621). By Plaintiff's own admission, he engaged in conduct that met the requirements of this violation. Plaintiff testified that:

- A lot of people interpret his tone as aggressive, and his demeanor can be "taken the wrong way." (ECF No. 140-3 at PageID.598.)
- He told Defendant to "watch your fucking mouth and watch who you're talking to." (*Id.*)
- His interaction with Bryant was loud enough that CO Darnell left the break room to see "what's going on?" (*Id.* at PageID.599.)

Thus, Plaintiff admits that his statements and cursing at Bryant were sufficiently loud and disruptive to cause CO Darnell to leave the break room to investigate the incident. In other words, Bryant had a legitimate non-retaliatory basis to write the ticket.[2]

Plaintiff contends that genuine issues of material fact preclude summary judgment. First, he notes that the MDOC dismissed the misconduct ticket and never made an actual finding that substantiated Plaintiff's actions. (ECF No. 144 at PageID.636–37.) But just as "[a] finding of guilt at a prison misconduct hearing does not act as an absolute bar to a prisoner's First Amendment retaliation claim," *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018), the lack of a guilty finding on a misconduct ticket is not necessarily indicative of retaliatory motive or lack of a factual basis for the misconduct ticket. Here, it is apparent that the hearing officer dismissed the charge because she believed that ARUS Beak should have made a statement in order to substantiate the charge, not realizing that Defendant Bryant and ARUS Beak were one and the same. Nothing about the dismissal indicates that the hearing officer would not have sustained the misconduct charge had she realized that the reporter was, in fact, Beak.

Second, Plaintiff contends that the fact that other prisoners who were present during the incident and responded verbally did not receive misconducts implies retaliatory disparate treatment. (*Id.* at 637.) But Plaintiff overlooks a key difference: Plaintiff initiated the disturbance; the other prisoners did not. Thus, they were not similarly situated to Plaintiff.

Plaintiff also says that other genuine issues remain, such as whether Plaintiff's cellmate had a contagious medical condition; whether Defendant Bryant retaliated against him; whether Plaintiff actually created a disturbance that merited a write-up; and the actual cause of the

---

[2] In light of Plaintiff's admissions, his disagreement that he caused a disturbance that warranted a misconduct ticket is insufficient to show that the misconduct was unwarranted or was retaliatory.

dismissal. (*Id.* at PageID.631–32.) Plaintiff is mistaken. First, whether the cellmate actually had MRSA or anything else is irrelevant to whether Defendant Bryant had a non-retaliatory basis to issue the ticket. Second, Plaintiff's own testimony admitting acts that amount to the infraction of Creating a Disturbance supports that Defendant Bryant did not act out of retaliation in writing the misconduct ticket. Third, Plaintiff's own opinion about the seriousness of his conduct and whether it merited a misconduct ticket is of no moment in light of his admissions of conduct that met the definition of Creating a Disturbance. Finally, the reason for the dismissal of the charge does not preclude summary judgment. The hearing report states the reason for the dismissal: the hearing officer believed that ARUS Beak should have made a statement, even though Beak/Bryant was actually the reporter. Plaintiff's testimony about what the hearing officer told him is hearsay that cannot create a genuine issue of material fact. (ECF No. 140-3 at PageID.600.)

Finally, Plaintiff relies heavily on *McCain v. Jenkins*, No. 2:15-cv-1262, 2020 WL 5651537 (S.D. Ohio Sept. 23, 2020), as instructive in this case. The plaintiff in *McCain* alleged numerous acts of retaliation, but there is no indication that he admitted conduct, as Plaintiff has here, showing that the defendant had a legitimate, non-retaliatory basis to take the adverse action. For example, the plaintiff in *McCain* created a genuine issue of material fact through his "affidavit that he did not do the things he was accused of in the conduct report." *Id.* at *4. This, alone, distinguishes *McCain*. Instead, the instant case is more factually similar to *Parker v. Vasquez*, 1:16-cv-450, 2019 WL 1586866 (W.D. Mich. Mar. 14, 2019), *report and recommendation adopted*, 2019 WL 1585381 (W.D. Mich. Apr. 12, 2019), in which summary judgment was granted because the plaintiff admitted conduct (refusing to comply with a direct order and refusing to perform his work assignment) that provided a non-retaliatory basis for the adverse action. *Id.* at *4–5.

Accordingly, Plaintiff fails to demonstrate a genuine issue of material fact that precludes summary judgment.

## IV.  Conclusion

For the foregoing reasons, I recommend that the Court **grant** Defendant Bryant's Motion for Summary Judgment, (ECF No. 139), and dismiss this action **with prejudice**.

Dated: October 19, 2021                                             /s/ Sally J. Berens
                                                                                    SALLY J. BERENS
                                                                                    U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).